606 A.2d 1384

Michael JACKSON, Appellant,

v.

TRAVELERS INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Dec. 11, 1991.

Filed April 7, 1992.

Reargument Denied June 8, 1992.

William Goldstein, Bensalem, for appellant.

Thomas P. Kelly, Philadelphia, for appellee.

Before CIRILLO, DEL SOLE and MONTEMURO, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County. On March 3, 1989, plaintiff/appellant Michael Jackson (Jackson) and his wife, Dorothy Lee Jackson, were walking together across Allegheny Avenue at the intersection of Allegheny Avenue and 16th Street in Philadelphia. Dorothy Lee Jackson was struck and killed by an automobile owned and operated by George Madison. Mr. Jackson witnessed his wife's death.

At the time of the accident, Madison's vehicle was not insured. Mr. and Mrs. Jackson did not own an automobile, and neither were insured under any automobile insurance policy.

Jackson filed an application for uninsured motorist benefits with the Pennsylvania Assigned Claims Plan (the Plan) as a result of the automobile accident. Pursuant to the Plan, the matter was assigned to defendant/appellee Travelers Insurance Company (Travelers). Travelers denied the claim and the matter was submitted to arbitration. The panel found in favor of Jackson. Travelers appealed to the Court of Common Pleas of Philadelphia County for a *de novo* trial and the case was heard before the Honorable G. Craig Lord on a stipulated record. Judge Lord overturned the arbitration panel's decision and entered judgment in

favor of Travelers. Jackson appealed to this court, raising one issue for our review:

Does the Assigned Claims Plan provide uninsured motorist coverage for emotional trauma suffered by a husband who witnesses his wife's fatal auto accident?

Subchapter E of The Motor Vehicle Financial Responsibility Law (MVFRL),[1] entitled the Assigned Claims Plan, distributes financial responsibility among insurers for the assessment of costs for certain eligible claimants who are not otherwise entitled to recovery of benefits. 75 Pa.C.S. § 1751. A person is eligible to recover under the Plan if he or she meets the eligibility requirements set forth in section 1752 of the MVFRL. A person is an eligible claimant if he or she:

(1) Is a resident of this Commonwealth.

(2) *Is injured as the result of a motor vehicle accident occurring in this Commonwealth.*

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorized pedalcycle or other like type

---

1. Act of February 12, 1984, P.L. 26, No. 11, 75 Pa.C.S. § 1701 *et seq.*

vehicle required to be registered under this title and involved in the accident.

75 Pa.C.S. § 1752(a) (emphasis added). Jackson claims that he is an eligible claimant under section 1752(a), and that he is entitled to recover under section 1754. Section 1754, entitled "Additional coverage," provides that an eligible claimant

> who has no other source of applicable uninsured motorist coverage and is otherwise entitled to recover in an action in tort against a party who has failed to comply with this chapter *may recover for losses or damages suffered as a result of the injury* up to $15,000 subject to an aggregate limit for all claims arising out of any one motor vehicle accident of $30,000. If a claimant recovers medical benefits under section 1753 (relating to benefits available), the amount of medical benefits recovered or recoverable up to $5,000 shall be set off against any amounts recoverable in this section.

75 Pa.C.S. § 1754 (emphasis added). The point of discrepancy with respect to Jackson's eligibility is the construction of the term "injury." Jackson contends that this term includes the emotional trauma or distress he suffered as a result of having witnessed his wife's death. We disagree.

The trial court recognized that under Pennsylvania law a plaintiff may recover damages against a tortfeasor for negligent infliction of emotional distress. *See Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970). The court aptly noted, however, that this is not the question in this case. Our focus is limited to the coverage encompassed in the MVFRL.

The definitional section of the MVFRL defines the term "injury" as "[a]ccidentally sustained *bodily harm* to an individual and that individual's illness, disease or death resulting therefrom." 75 Pa.C.S. § 1702 (emphasis added). Jackson's emotional trauma does not fall within the statutory requirement that an eligible claimant suffer *bodily harm* as a result of the motor vehicle accident. 75 Pa.C.S. § 1702.

The No–Fault Motor Vehicle Insurance Act (the No–Fault Act), repealed effective October 1, 1984, by Act of February 12, 1984, P.L. 26, No. 11 § 8(a), which preceded the MVFRL, also defined "injury" as "accidentally sustained *bodily harm*." 40 P.S. § 1009.103 (emphasis added). This court's decision in *Needleman v. Liberty Mutual Fire Insurance Co.*, 352 Pa.Super. 288, 507 A.2d 1233 (1986), interpreting this language under the No–Fault Act is helpful in our analysis of this issue. *See* 1 Pa.C.S. § 1922(4) ("when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.")

In that case, Marvin Needleman, his wife Eydis Needleman, and their daughter Melissa (the Needlemans) sought benefits under the No–Fault Act for psychological and psychiatric care and costs as a result of witnessing a family member's accidental death. Rachael Needleman, aged 4, was struck and killed by a passing motor vehicle while crossing the street in front of her home. Mr. and Mrs. Needleman witnessed their daughter's death, as did the child's sister, Melissa. 352 Pa.Super. at 289–90, 507 A.2d at 1234. The Needlemans' automobile insurer, Liberty Mutual, denied coverage on the basis that the claims for psychiatric and psychological care and costs were not compensable under the No–Fault Act. On appeal, this court agreed and held that negligently inflicted mental trauma was not "bodily injury" under the No–Fault Act. *Id.*, 352 Pa.Superior Ct. at 292–94, 507 A.2d at 1236. There, we stated:

> It is a basic rule of statutory construction that words are to be construed "according to their common and approved usage." 1 Pa.C.S. § 1903(a).... It is clear that the common and approved usage of "bodily" injury connotes a physical, and not mental, injury.... "[O]ur legislature did not have in mind that every conceivable injury ... would result in no-fault benefits under the Act."

*Id.* (citing *Bills v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 188, 194, 463 A.2d 1148, 1151 (1983)). We see no

reason to dispense with the reasoning in *Needleman,* nor do we find reason to to reach outside the statute to define the term injury. *See* 1 Pa.C.S. §§ 1921, 1922; *see also Snyder v. Commonwealth Department of Transportation,* 64 Pa. Cmwlth. 599, 441 A.2d 494 (1982) (sections of a statute must be construed with reference to the entire statute and not apart from their context); *In Interest of Jones,* 286 Pa.Super. 574, 429 A.2d 671 (1981) (in construing a statute, sections of statute must be construed with reference to entire statute and not alone).

Additionally, we are not persuaded by Jackson's arguments that the *Needleman* analysis is inapplicable because it did not construe the MVFRL. *See Royal Indemnity Co. v. Adams,* 309 Pa.Super. 233, 455 A.2d 135 (1983) (in determining intent of General Assembly, court must consider similar legislation). Like the prior No–Fault Act, the MVFRL is replete with exceptions, exclusions, and eligibility requirements which restrict coverage to those situations which our General Assembly perceives as fair and essential. In a recent decision interpreting the No–Fault Act, our supreme court stated: "The purpose of the No–Fault Act was to establish 'a Statewide system of prompt and *adequate* basic loss benefits for motor vehicle accident victims....' 40 P.S. § 1009.102(b)." *Drake v. Pennsylvania National Mutual Casualty Insurance Co.,* 529 Pa. 44, ——, 601 A.2d 797, 800–01 (1992), (emphasis added). In enacting the No–Fault Act and the MVFRL, the General Assembly did not intend to extend coverage for every foreseeable type of emotional or mental injury. Otherwise, it would not have specifically retained the No–Fault Act's definition, "bodily injury," to define injury in the MVFRL. *See* 1 Pa.C.S. § 1922(4); *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"); *Platts v. Government Employees Insurance Co.,* 301 Pa.Super. 379, 447 A.2d 1017 (1982) (superior court is not permitted to disregard the clear and

unambiguous language of the No–Fault Act on the pretext that its literal interpretation will frustrate its spirit).

Jackson directs us to this court's decision in *Pirches v. General Accident Insurance Co.*, 354 Pa.Super. 303, 511 A.2d 1349 (1986) to support his claim. In *Pirches*, this court was presented with the question of whether a loss of consortium claim was cognizable under the terms of the claimants' insurance policy or under the Uninsured Motorist Act (repealed).[2]

General Accident Insurance Company [General Accident] issued Sherry and George Pirches, husband and wife, an automobile insurance policy. While in Florida and riding as a passenger in a car owned and operated by her mother, Mrs. Foy, Sherry Pirches was injured when a taxicab collided with her mother's car. Sherry Pirches brought a claim against the cab company and the driver of the taxi. In addition, Sherry Pirches brought a claim under Mrs. Foy's underinsured motorist policy. Thereafter, both Sherry and George Pirches brought a claim against General Accident pursuant to the uninsured motorist provision of their Pennsylvania policy.

The case proceeded to arbitration and, following a hearing, the arbitration panel awarded Sherry Pirches $37,500, reduced by $15,000 which she had received from her two prior claims. The panel also awarded George Pirches $2,500 on his loss of consortium claim. The arbitration awards were confirmed by the Philadelphia County Court of Common Pleas. General Accident appealed to this court and argued that the arbitration panel and the court of common pleas had erred in awarding George Pirches $2,500 for loss of consortium.

On appeal, this court determined that the claim was not precluded by either the terms of the policy or the by the Uninsured Motorist Act. The *Pirches* court determined that the victim of the accident, Sherry Pirches, was a

2. Act of August 14, 1963, P.L. 909, § 1, 40 P.S. § 2000, as amended by Act of December 19, 1968, P.L. 1254, No. 397, § 1, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

"covered person" who suffered "bodily injury" under the policy, and that her husband, George Pirches, as a named insured, was also a "covered person" under the policy. In concluding that George Pirches could recover for a loss of consortium claim, the court reasoned that

> as a named insured, George Pirches is a "covered person." The policy provides damages that "a" covered person may be legally entitled to recover from the uninsured driver if "a" covered person suffers bodily injury. There is no question that Sherry Pirches, "a covered person," suffered bodily injury. The policy does not limit payments to damages that the injured covered person may collect. If it did, it would state that it would pay damages for injuries that a covered person may collect for injuries to *that* covered person. It is not so limited.

354 Pa.Super. at 313, 511 A.2d at 1354–55 (emphasis in original). The court then addressed whether the Uninsured Motorist Act prohibited recovery. The *Pirches* court held:

> Nothing in the Uninsured Motorist Act or in Pennsylvania law prohibits ... recovery. The Act requires coverage for ... persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom ...' Remembering that the Act is to be liberally construed in favor of coverage, we hold that this language encompasses a consortium claim.

*Id.*, 354 Pa.Superior Ct. at 314, 511 A.2d at 1355.

■ The dissent reasons that if a consortium claim falls within the definition, then emotional harm must also fall within the definition of injury. The dissent's logic is based upon the following syllogism:

1. A consortium claim is equal to bodily injury;

2. A consortium claim is equal to emotional or mental injury (Dissenting Opinion at 2);

3. Therefore, bodily injury equals emotional or mental injury.

This argument, however, is not sound because the second premise is flawed. A consortium claim is not a claim for emotional or mental trauma. Rather a claim of consortium is defined as "conjugal fellowship of husband and wife, and the right to the companionship, society, co-operation, and the aid of the other in every conjugal relation." Black's Law Dictionary 280 (5th ed.1979). A consortium claim is grounded on the loss of a spouse's services after injury. *Burns v. Pepsi–Cola Metro. Bottling Co.*, 353 Pa.Super. 571, 510 A.2d 810 (1986).

Furthermore, the *Pirches* decision was supported by prior case law that held that a consortium claim falls within the definition of injury (and hence bodily injury) so as to permit a tort action for non-economic detriment under the No– Fault Act. *Zagari v. Gralka*, 264 Pa.Super. 239, 399 A.2d 755 (1979). In reaching this result, the *Zagari* court recognized that the Florida courts have found that a consortium claim is expressed "in terms of 'accidental bodily injury' .. [and] the Supreme Court of New York ... held that the husband's action for services, society, and companionship of his wife was an adjunct to his wife's action for 'personal injuries.'" *Zagari v. Gralka*, 264 Pa.Super. at 247, 399 A.2d at 760 (citations omitted). In addition, this court has recognized that "a consortium claim is inextricably intertwined with the underlying action for personal injury." *Novelli v. Johns–Manville Corp.*, 395 Pa.Super. 144, 151, 576 A.2d 1085, 1088 (1990).[3]

Thus, in our view *Pirches* is distinguishable. At least at one time, under *Pirches,* it was plausible to define injury liberally to encompass a consortium claim.[4] Given our determination in *Needleman* it is implausible to define

3. This court has noted, however, that recent development of Pennsylvania common law recognizes that loss of consortium is no longer a derivative claim, but rather a separate and distinct cause of action from the injured spouse's claim. *See Koenig v. Progressive Insurance Co.*, 410 Pa.Super. 232, 239 n. 6, 599 A.2d 690, 693 n. 6 (1991).

4. This is not to endorse the view espoused in *Pirches,* or to otherwise express an opinion on whether the term injury encompasses a consortium claim under the MVFRL.

injury or bodily injury to encompass mental or emotional harm. Given also the express language in the MVFRL, we find the Assigned Claims Plan is limited to extending coverage to "eligible" claimants, to wit, *claimants who are injured, i.e., suffer bodily injury* as a result of a motor vehicle accident. 75 Pa.C.S. §§ 1702, 1752(a)(2).

We conclude, therefore, that it is beyond the scope of the Assigned Claims Plan to extend coverage to individuals who have not suffered a "bodily injury" as provided for in the statute. *See* 75 Pa.C.S. §§ 1702, 1754; *see also Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976) (statutes are not presumed to make changes in rules and principles of common law or prior existing law beyond what is expressly declared in their provisions); *Royal Indemnity Co. v. Adams*, 309 Pa.Super. 233, 455 A.2d 135 (1983) (in determining intent of General Assembly, court must consider similar legislation).

Order affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I must dissent from the majority's holding that the Assigned Claims Plan [Plan] of the Motor Vehicle Financial Responsibility Act [MVFRL] 75 Pa.C.S.A. § 1701 *et seq.*, does not provide coverage for emotional trauma suffered by a husband who witnesses his wife's fatal auto accident.

The majority relies on section 1752 of the MVFRL which states that a person is eligible to recover benefits from the Plan if that person is injured as a result of a motor vehicle accident. Then the majority points to section 1702 in which injury is defined as "accidently sustained bodily harm to an individual and that individual's illness, disease or death resulting therefrom." Finally, the majority, relying on *Needleman, supra,* which holds that the No–Fault Act precludes coverage for emotional trauma because bodily harm does not include psychological or emotional harm suffered because of a motor vehicle accident, concluded that

Appellant is not a person who can recover under the Plan. For a variety of reasons I disagree with this analysis.

Initially, I would note that the MVFRL combined first party benefits, uninsured motorist benefits and assigned claims benefits in the same legislation. Subchapter C of the MVFRL, pertaining to uninsured motorist benefits states in pertinent part that, "uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and *are legally entitled to recover damages* therefor from owners or operators of uninsured motor vehicles." (42 Pa.C.S.A. § 1731(b)) (emphasis added).

We held in *Pirches v. General Accident Insurance Co.*, 354 Pa.Super. 303, 511 A.2d 1349 (1986), in construing a former version of the Uninsured Motorist Act now found in the MVFRL, and which contained similar language to the MVFRL,[1] that the phrase "legally entitled to recover" is ambiguous, requiring it to be construed in a manner most favorable to the insured, so as to effect its object and promote justice. We stated that unless there are present, strong legal or equitable considerations to the contrary, we are required to construe the Uninsured Motorist Act to find coverage. *Id.*, 354 Pa.Super. at 313, 511 A.2d 1349, (citations omitted). We also held, citing *Zagari v. Gralka*, 264 Pa.Super. 239, 399 A.2d 755 (1979), that absent explicit language abolishing a certain type of tort liability, (in the case of *Zagari*, consortium), statutes are not presumed to make changes in rules or principles of common law. *Pirches, supra*, 354 Pa.Super. at 315, 511 A.2d 1349.

Because there was no explicit language in the Uninsured Motorist Act excluding recovery for consortium, and because the purpose of the act was to protect innocent victims from irresponsible, uninsured drivers, that in order to effec-

---

**1.** The former Uninsured Motorist Act, (40 Pa.C.S.A. § 2000(a)), states in pertinent part that motor vehicle liability insurance is provided, "for the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom ..."

tuate the Act's object and promote justice, George Pirches was entitled to recover uninsured motorist benefits for loss of consortium when his wife was injured in an automobile accident.

Although we agree with the majority that the basic formula for defining consortium is loss of the spouse's "services", the harm done to the spouse claiming loss of consortium includes emotional or mental harm. Certainly persons are not required to prove that they suffered physical disability, disease or death, as the result of the negligent physical injury to their spouse in order to recover under a claim of loss of consortium.

We have recognized that a claim of loss of consortium arises as a right from the "marriage relationship which the husband and wife have respectively to the *society, companionship, and affection* of each other in their life together." *Burns v. Pepsi–Cola Metropolitan Bottling*, 353 Pa.Super. 571, 510 A.2d 810 (1986) (emphasis added) (citation omitted). Furthermore, our supreme court has stated that the word "services", "implies whatever of aid, assistance, *comfort, and society* the wife would be expected to render to, or bestow upon her husband ..." *Kelley v. Mayberry Township*, 154 Pa. 440, 447, 26 A. 595, 597 (1893), (citation omitted) (emphasis added).

Today we would substitute for the old fashioned words "comfort", "companionship" and "society" such phrases as "emotional support", "psychological compatibility", or "social relations", but clearly the damages recovered for the loss of these attributes of marital life, normally claimed in an action for loss of consortium, are damages recovered for emotional or mental injuries or harms.

Thus, when we held in *Pirches* that Mr. Pirches was "legally entitled" to recover for bodily injury, we held that he was entitled to recover uninsured motorist benefits for mental or emotional injury. Given that, (1) consortium claims were not specifically exempted from coverage in the statute, (2) a cause of action for loss of consortium is an action in tort which may be maintained under the law of

this Commonwealth, and (3) uninsured motorist benefits were coextensive with those benefits recoverable under law, Mr. Pirches was legally entitled to recover for loss of consortium under the Uninsured Motorist Act.

I would hold that the same reasoning applies here as regards to Section E of the MVFRL concerning the Assigned Claims Plan. Section E provides that an eligible claimant who "has no other source of applicable uninsured motorist coverage *and is otherwise entitled to recover in an action in tort* from a party who has failed to comply with this chapter may recover for losses or damages suffered as a result of the injury," up to a maximum of $5,000 for medical benefits. 75 Pa.C.S.A. §§ 1753–1754. This section clearly indicates that if a claimant has no other source of uninsured motorist benefits, then that claimant's entitlement to benefits from the Plan is identical to the claimant's rights to recover in an action in tort.

In construing an older version of the Assigned Claims Plan, the supreme court stated in *Tubner v. State Farm Mutual Insurance Co.*, 496 Pa. 215, 436 A.2d 621, 623 (1981) that "[a]ssigned insurers are obligated precisely as if they had issued basic loss insurance policies," and, "[b]ecause a claimant under the assigned claims plan is covered as if he had obtained a policy of basic loss insurance, his right to uninsured motorist benefits cannot be distinguished from that of holders of valid insurance policies." *Id.*, 496 Pa. at 220, 436 A.2d at 623 n. 13.

The parties have stipulated that the other driver, Mr. Madison, was negligent and that his negligence was more than 50% the cause of the accident. Therefore, under *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), Mr. Jackson would be entitled to recover for his emotional distress from the tortfeasor, and the Plan would be obligated to provide uninsured motorist benefits to Mr. Jackson who has no other source of uninsured motorist benefits.

Apart from the explicitly enumerated exceptions in the Plan, (see § 1753), and the dollar limitations in the *amount* of the recovery, there is no basis in the MVFRL for distin-

guishing between the scope of uninsured motorist coverage for private policies in Subchapter C and assigned claims coverage in Subchapter E. Without an explicit exception, we can not presume that the MVFRL made changes in the principle of law found in *Sinn v. Burd*, allowing for recovery for the negligent infliction of emotional distress. As *Tubner* teaches, the scope of the victim's right to recovery from an uninsured motorist who may recover under a private policy is no different than the right to recover uninsured benefits under the Plan.

The Majority relies on this court's holding in *Needleman v. Liberty Mutual Fire Insurance Co.*, 352 Pa.Super. 288, 507 A.2d 1233 (1986), which construed the words "bodily harm" in the "No–Fault" Act. The majority states that the General Assembly would not have retained the definition of bodily injury in the MVFRL that was found in the earlier "No–Fault" Act, if they wanted to extend coverage to mental or emotional harm. (page 6). It quotes the language in 1 Pa.C.S. § 1922(4), "when a court of last resort has construed the language used in a statute, the General Assembly in *subsequent* statutes on the same subject matter intends the same construction to be placed upon such language." (emphasis added).

However, the *Needleman* decision was decided two years after the MVFRL was passed and the "No–Fault" Act was repealed. Therefore, we may not use the rule of statutory construction cited above because the MVFRL was not passed subsequent to the *Needleman* decision and the General Assembly did not have the benefit of *Needleman* when it passed the MVFRL. It would be unwarranted to conclude that by using the term "bodily harm", the General Assembly intended to exclude recovery for mental or emotional injury under the MVFRL. Indeed, it could just as readily be concluded that had the General Assembly had the benefit of this decision, they would have changed the definition of injury in the MVFRL.

Because, unlike the Majority, I do not believe that our court's construction of the term "bodily harm" in *Needle-*

*man* is controlling in the instant case, and because I believe that given the context of the MVFRL and the the pre–1984 cases which liberally interpreted the provisions of the laws providing assigned claims and uninsured motorist coverage to protect victims of motor vehicle accidents, I would find that Mr. Jackson may recover under Section E of the MVFRL for the emotional trauma he suffered when he witnessed his wife's fatal auto accident.